[No. 16511. Department One. September 2, 1921.]

## WILLIAM LUCKKART et al., Appellants, v. DIRECTOR GENERAL OF RAILROADS et al., Respondents.[1]

MUNICIPAL CORPORATIONS (383, 391)—STREETS—AUTOMOBILES—CONTRIBUTORY NEGLIGENCE—EVIDENCE—SUFFICIENCY. In an action for damages for personal injuries, plaintiffs were properly nonsuited, where the evidence showed their injuries resulted from driving their automobile in the nighttime into a light pole, set in the middle of a space devoted to traffic and which at the time was unlighted, and it appears plaintiffs were familiar with the surroundings, that, in making a turn and driving slowly in low gear which would enable them to stop within a couple of feet, the car was driven into the pole, the presence of which should have been noted by a careful driver as his front lights swept across it in making the turn (FULLERTON, J., dissenting).

Appeal from a judgment of the superior court for Yakima county, Taylor, J., entered May 26, 1920, upon granting a nonsuit, dismissing an action for personal injuries. Affirmed.

*O. B. Root* and *Harold B. Gilbert,* for appellants.

*Geo. T. Reid, J. W. Quick, L. B. da Ponte,* and *Rigg & Venables,* for respondents.

[1]Reported in 200 Pac. 564.

BRIDGES, J.—The plaintiffs appeal from a judgment of nonsuit in their action to recover damages on account of personal injuries. Construing the testimony in the light most favorable to them, it is shown that their accident occurred in the following manner: The depot of the Northern Pacific Railway Company, in the city of Toppenish, is reached from the city by means of a driveway located on the railway company's private right of way, which driveway was laid out and is maintained by the railway company. Within the right of way and in front of the depot, is located a small park on one side of the driveway, and the freight depot on the other side. Where the driveway goes between the freight depot and the park it is more than one hundred feet in width. The space between the depot and the park and freight depot is open and used exclusively for a roadway. In about the center of that portion of the driveway located between the freight depot and the park was a large electric light pole, placed there long ago by the defendant Pacific Power & Light Company, upon which wires were strung which conveyed all the electric light used at the depot. The pole was about 55 feet from the park, 75 feet from the freight house, and about 90 feet from the depot. The plaintiffs are farmers and reside within two or three miles of Toppenish.

In August, 1919, very early in the morning, plaintiffs brought their daughter with them in their automobile to the depot that she might take a train leaving there about three o'clock a. m. At that time it was dark, and there were no lights of any character on the electric light pole, or in its immediate vicinity, nor was the private driveway in any manner lighted. Having put their daughter aboard the train, they again entered their automobile, which was immediately in front of the depot, for the purpose of returning to their home. Mr. Luckkart was driving, and his wife was in

the front seat with him. His front lights were burning brightly and his brakes were in good order. In order to get out to the city street they desired to take, it was necessary for them to make a turn to the left on the driveway within the private grounds of the railroad company. In so doing, the automobile came into collision with the electric light pole and both plaintiffs were injured. From the time the automobile left the door of the depot to the time of its collision with the pole, it was being driven in low gear, at the rate of about five miles per hour, and could have been stopped within a foot or two. The right front spring of the car struck the pole.

Mr. Luckkart testified that he did not see the pole before striking it, and that he could not have seen it because his car was approaching it on a curve to the left, and that his lights would not be thrown upon it. It seems clear to us, however, that the physical facts conclusively show that the driver of the automobile could have seen the pole in time to have avoided the collision. One important fact stands out, and that is that it was the right front spring of the automobile which hit the pole. Since the car was turning to the left, it must follow that, at some time before the collision, the lights must have shone fully on the pole, and during that period it was directly in front of the car. Such being the facts, we must conclusively presume that the driver of the car could have seen the pole in time to have avoided the accident. But the fact that he could have seen it was not sufficient to nonsuit him. To justify that action we must be able to say that, not only could he have seen the pole, but that had he used reasonable care, under all the circumstances, he would have seen it in time to have avoided hitting it. The only question, therefore, is whe-

ther, under all of the circumstances, we can say that, if the driver of the car had used ordinary care, he would have seen the pole and avoided the collision. We think the ruling of the trial court was right. Both Mr. and Mrs. Luckkart were fairly familiar with the whole situation, although they did not know, or at least remember, that there was a pole located in the driveway. They had been on these grounds before, and for some years had lived within two or three miles of them. When the driver was some distance from the pole, he must have been driving directly at it, with the front lights shining squarely on it. There was no other traffic on the roadway or in the immediate vicinity, and there was nothing to confuse the driver of the automobile or distract his attention. Under these circumstances, it would seem quite impossible for him not to see the pole, if he was paying any attention to where he was going. But the rules of law impose that duty on the driver—to keep his senses about him; to look where he is going; to pay reasonable heed to his surroundings. Had he done so, it is manifest that he must have seen the pole in plenty of time to have avoided striking it. We cannot escape the conclusion that the collision was the result of the negligence of the driver of the automobile.

The judgment is affirmed.

PARKER, C. J., MACKINTOSH, and HOLCOMB, JJ., concur.

FULLERTON, J. (dissenting)—The driveway mentioned in the majority opinion was opened by the railway company as a means of approach to its depot, and any member of the general public was invited to use it when upon lawful business with the railway company. The electric light pole mentioned stood in the middle of this highway, and was at all times a menace

to its use, and particularly so in the nighttime, since it was left without a light or any form of guard to mark its position. The appellants, at the time they were injured, were in lawful use of the highway, and had a right to suppose that nothing would be left in it in the form of an obstruction which might result in their injury. They did not know of the presence of the pole, and therefore were not obligated to give it the same attention as they would have been obligated had they known of its existence. It seems to me, therefore, too much to say that they are conclusively presumed to be negligent because they failed to discover its presence and avoid it. It is true, undoubtedly, that in making the turn in the passage from the depot to the pole, the lights of the automobile flashed over the pole; and it is possible, also, that the appellants, had they been at that instant looking in that direction, would have discovered the pole. But I cannot think this the question at issue. The question, to my mind, is, were they legally obligated to look for it. I cannot conclude that they were, and without so concluding I cannot conceive that they were guilty of contributory negligence, as matter of law, in failing to see it. I am constrained therefore to dissent from the conclusion reached by the majority.